IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VICENTE BILORA MBENGA, | * | |
| Petitioner, | * | Civil Action No. RDB-13-1424 |
| v. | * | Criminal Action No. RDB-09-548 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Petitioner Vicente Bilora Mbenga ("Petitioner" or "Edwards") was convicted by jury of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, two counts of bank fraud, in violation of 18 U.S.C. § 1344, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Petitioner was sentenced to a total of seventy-two (72) months imprisonment. After the United States Court of Appeals for the Fourth Circuit affirmed the judgment against him, Petitioner filed the presently pending Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 438). Additionally, Petitioner has filed two other papers, stylized as motions for summary judgment, which raise the same basic issues and respond to the arguments presented in the Government's opposition brief.[1]

The parties' submissions have been reviewed and no hearing is necessary. *See* Local

---

[1] In addition to these substantive "motions," there are two additional procedural motions still pending. The Government's Motion for Extension of Time to File Response (ECF No. 461) is now moot because this Court later granted the Government's Second Motion for Extension of Time to File Response by a December 12, 2013 Order (ECF No. 475) and the Government has now filed its Response. Similarly, Petitioner's Motion to Request the Court to Provide Petitioner with the Current Due Date for Government's Response (ECF No. 477) is also moot. Accordingly, those motions will be denied as moot.

Rule 105.6 (D. Md. 2014).  For the reasons that follow, Petitioner Vicente Bilora Mbenga's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 438) pursuant to 28 U.S.C. § 2255 is DENIED.

## BACKGROUND

Petitioner Vincente Bilora Mbenga was originally indicted by grand jury for conspiracy to commit bank fraud and one count of bank fraud.  Subsequently, a superseding indictment added another count of bank fraud and two counts of aggravated identity theft on April 28, 2010.

Petitioner was convicted by a jury of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, two counts of bank fraud, in violation of 18 U.S.C. § 1344, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A on July 5, 2011 after a five-day trial.  At the September 29, 2011 sentencing hearing, this Court calculated the intended loss to be greater than $200,000 but less than $400,000, and therefore twelve offense levels were added.  This Court also determined that the evidence showed that the scheme used sophisticated means and that Petitioner was a leader and organizer of the scheme.  This Court also applied a two level guideline adjustment for obstruction of justice, which related to Petitioner's "outing" of a winess against him who was also being detained.  Accordingly, Petitioner was sentenced to a sentence of seventy-two months.

After the judgment was affirmed by the United States Court of Appeals for the Fourth Circuit, Petitioner filed the currently pending Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 438) on May 13, 2013.  Petitioner also requested access to redacted copies of some government exhibits, which he received.  Subsequently, Petitioner filed a

supplement to his motion.  *See* ECF No. 451.  In those papers, Petitioner asserted various arguments concerning alleged ineffective assistance of counsel, mostly relating to various enhancements applied to him at sentencing.

Before the Government filed its response, Petitioner filed a Motion for Summary Judgment (ECF No. 481) asserting that their were no factual matters in dispute with regard to his petition.  After the Government filed its opposition brief, Petitioner filed an addition paper (ECF No. 488), again stylized as a motion for summary judgment, that responded to the Government's arguments.

## STANDARD OF REVIEW

This Court recognizes that Petitioner is *pro se* and has accorded his pleadings liberal construction.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (b) the court lacked "jurisdiction to impose the sentence, . . . [(c)] the sentence was in excess of the maximum authorized by law, or [(d) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255.  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.' "  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

To state a claim for relief under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477

(2000). The first, or "performance" prong, of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice" prong, requires that defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697. The Fourth Circuit has also noted that the mere possibility of a different trial result does not satisfy the burden of proving prejudice placed on the defendant. *See Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986). Additionally, "[i]neffective assistance claims are generally not cognizable on direct appeal . . . 'unless [an attorney's ineffectiveness] conclusively appears from the record.'" *United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008) (quoting *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999)).

The *Strickland* standard applies to both trial and appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("The proper standard for evaluation [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*."). First, Petitioner must show that his appellate counsel rendered objectively unreasonable assistance by failing to

discover and present "nonfrivilous issues."   *Id.*   Second, Petitioner must then establish

prejudice by showing that "he would have prevailed on his appeal."   *Id.*

## DISCUSSION

### I.   PETITIONER'S 28 U.S.C. § 2255 MOTION

In his § 2255 motion, Petitioner asserts that his appellate counsel provided ineffective

assistance by (1) failing to challenge this Court's determination of loss for guidelines

purposes; (2) failing to argue that this Court abused its discretion under Rule 32 of the

Federal Rules of Criminal Procedure in determining disputed guidelines factors, and (3)

failing to challenge the jury verdict finding him guilty of two counts of aggravated identity

theft.[2]   As outlined above, Petitioner must demonstrate both that the performance of his

appellate counsel was deficient and that  there is a reasonable probability that, but for his

counsel's performance, the result of Petitioner's appeal would have been different.   *See*

*Smith*, 528 U.S. at 285; *Strickland*, 466 U.S. at 694.

### A.  Determination of "Loss"

Petitioner's first argument is that this Court improperly applied a twelve level

enhancement after determining that the amount of loss in this case was between $200,000

and $400,000 under U.S.S.G. §2B1.1(b)(1)(I).[3]   Petitioner contends that he only cashed three

postal money orders and that these money orders were in an amount much less than

---

[2] Petitioner states the issue accordingly: "Appellate counsel was constitutionally ineffective due to his failure to raised [sic] this issue on direct-Appeal because petitioner is actually innocent on count Twenty-two (22) allege [sic] in the indictment of Aggravated iddentity [sic] theft, 18 U.S.C. 1028(a)."

[3] The Application Note 3 of U.S.S.G. §2B1.1(b)(1)(I) states that "loss is the greater of actual loss or intended loss."   Actual loss means "the reasonably foreseeable pecuniary harm that resulted from the offense," while intended loss means "the pecuniary harm that was intended to result from the offense," including "intended pecuniary harm that would have been impossible or unlikely to occur."

$200,000.  In making this argument, however, Petitioner ignores both his conviction for bank fraud conspiracy and the testimony of his co-defendants that they had received checks and money orders from Petitioner to cash.  In determining the amount of loss, this Court carefully limited the calculation to losses from accounts that were linked to Petitioner by evidence at trial.  Moreover, under the sentencing guidelines, the calculation is not limited to the actual loss, but is instead the greater of the actual or intended loss. Accordingly, as a factual matter, this Court finds that Petitioner's arguments about this Court's calculation of loss are without merit.

Additionally, Petitioner contends that the twelve level enhancement violated his constitutional right to a jury determination of the amount of loss under *United States v. Apprehendi*,[4] 530 U.S. 469 (2000), and *Alleyne v. United States*,[5] 570 U.S. ---, 133 S. Ct. 2151 (2013).  Those cases, however, involved judicial fact-finding of facts that increased the statutory mandatory minimum or maximum for a crime.  This Court's calculation of the

---

[4] In *Apprendi v. New Jersey*, the United States Supreme Court held that a fact, other than a prior conviction, that increases the maximum penalty for a crime must be found by a jury as an element of that crime.

[5] In *Alleyne v. United States*, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), by holding that any fact that increases the mandatory minimum sentence for a crime is an element of crime — as opposed to a sentencing factor — that must be submitted to the jury.  *Alleyne,* 133 S.Ct. at 2156.  More specifically, the Court maintained that any finding as to whether a defendant had brandished a firearm in connection with crime of violence was an element of a separate offense that had to found by jury because it would elevate mandatory minimum term from five to seven years. *Id.* at 2162.

Notably, the Supreme Court's decision in *Alleyne*, however, does not apply to cases on collateral review and is not retroactive in nature. *See United States v. Stewart*, 540 Fed. App'x 171, 172 (4th Cir. 2013); *see also United States v. Reyes*, 755 F.3d 210, 211 (3d Cir.) *cert. denied*, 135 S. Ct. 695 (2014) (holding that *Alleyne* does not apply retroactively to cases on collateral review); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (declining to apply *Alleyne* retroactively to permit a petitioner to file a second collateral attack).

amount of loss under the sentencing guidelines, on the other hand, merely guided this Court's discretion in determining an appropriate sentence under the advisory guidelines.

Because Petitioner has failed to demonstrate that he has any basis for relief with respect to the loss calculation, Petitioner has failed to demonstrate ineffective performance by appellate counsel. Accordingly, there is no basis for relief under § 2255 based upon this Court's calculation of loss under the sentencing guidelines.

### B.  Abuse of Discretion under Rule 32 of the Federal Rules of Criminal Procedure

Petitioner's second argument is that his appellate counsel should have argued that this Court abused its discretion under Rule 32[6] by refusing to adjust various aspects in the presentence report.  Petitioner focuses on three specific determinations: (1) a two level enhancement for a scheme involving ten or more institutional banks and individual victims; (2) a two level enhancement for a scheme employing sophisticated means; and (3) a two level enhancement for obstruction of justice.  For the reasons explained below, all three of these claims are wholly meritless.  Moreover, because Petitioner fails to establish even a question as to these issues, there was no error by appellate counsel in not raising these issues on

---

[6] Rule 32(i)(3) of the Federal Rules of Criminal Procedure states:
> (3) Court Determinations. At sentencing, the court:
>> (A) may accept any undisputed portion of the presentence report as a finding of fact;
>> (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and
>> (C) must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

appeal, and there was no likelihood that Petitioner would have succeeded on appeal even if these issues had been raised.

### 1.     *Number of Victims*

Petitioner contends that the evidence at trial only linked him to one financial institution and three or four individuals.  Again, Petitioner ignores the overwhelming evidence of his involvement in the conspiracy that affected numerous individuals and financial institutions and the evidence that he accessed a number of accounts.  These actions were sufficient to trigger the enhancement for ten or more victims.

### 2.     *Scheme Involving Sophisticated Means*

Petitioner next contends that the scheme involved in this case did not involve sophisticated means because he did not employ "shell corporations."  Under § 2B1.1(b)(10)(C) of the Sentencing Guidelines, a two-level enhancement is applied when a defendant uses sophisticated means in committing acts of fraud or other offenses involving theft or counterfeiting.  As explained by the Fourth Circuit:

> "'Sophisticated means' means especially complex or especially intricate offense conduct, pertaining to the execution or concealment of an offense. . . . Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." U.S.S.G. § 2B1.1 cmt. n. 9(B); *see Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that Guidelines commentary explaining or interpreting a rule "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"). The enhancement applies where the entirety of a scheme constitutes sophisticated means, even if every individual action is not sophisticated. *See United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir.2012) (applying sophisticated means enhancement under U.S.S.G. § 2T1.1(b)(2) to tax fraud). Even so, sophistication

> requires more than the concealment or complexities inherent in fraud. *Id.* Thus, fraud per se is inadequate for demonstrating the complexity required for enhancement under U.S.S.G. § 2B1.1(b)(10)(C).

*United States v. Adepoju*, 756 F.3d 250, 257 (4th Cir. 2014).

In this case, the conspirators used dedit cards to fraudulently purchase postal money orders that were mailed to addresses to which Petitioner access or other addresses very near Petitioner's home.  The evidence demonstrated that Petitioner recruited several individauls into the scheme for the purpose of cashing postal money orders.  Clearly, this case did not involve a simple case of fraud.  Instead, Petitioner was involved in a complex laundering operation that employed a number of additional individuals in order to divert attention and suspicion from himself.[7]  Accordingly, the enhancement was justified.

### 3.    *Obstruction of Justice*

Peititioner also argues that he should not have received a two level enhancement for obstruction of justice.[8]  Specifically, Petitioner contends that the government's claims with respect to his "outing" co-defendant Maarij Howard as a cooperator "cannot be corroborated by any one."  These matters were the subject of a February 22, 2011 hearing

---

[7] In this sense, the scheme resembles one of the examples in Application Note 9 of § 2B1.1(b)(10)(C)—specifically, a telemarketing scheme in which the main office is located in one jurisdiction but which conducts its soliciting operations in another jurisdiction.

[8] Sentencing Guideline 3C1.1 calls for a two level enhancement where the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." U.S.S.G.§3C1.1.  Advisory Note 4 to Section 3C1.1 of the Sentencing Guidelines notes that "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so" is a basis for imposing this enhancement.

and of some of Mr. Howard's trial testimony. Despite Petitioner's protestations, the harassment of Mr. Howard was clearly established by a preponderance of the evidence. Accordingly, the enhancement was justified.

### C. Actual Innocence and the Jury Finding of Knowledge on the Aggravated Identity Theft Counts

Petitioner's final argument is that he is innocent of Count 22 of the superseding indictment[9] and that he did not have knowledge that the means of identification used belonged to victim Robert Colton. The jury heard evidence that Petitioner had purchased postal money orders with Richard Colton's debit card. The debit card used to purchase these money orders had been obtained by someone posing as Mr. Colton and having the card sent to an address in Hyattsville, Maryland.[10] Petitioner was the identified payee on three of the postal money orders that he personally cashed. Mr. Colton testified that he did not know Petitioner and that his account had been accessed via his debit card without his knowledge or consent. There was overwhelming evidence that the defendant had used the the name and account number of Richard Colton, and the jury was entitled to find that Petitioner had the requisite knowledge in light of all the evidence before it.[11]

---

[9] Count 22 of the Superseding Indictment charged that, on or about July 1 and 2, 2009, Petitioner "knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to wit: the defendant cashed Postal Money Orders which had been fraudulently purchased using the name and debit card number of "RC" (****-****-****-5424) without his knowledge and consent." *See* ECF No. 88.

[10] Various cooperating witnesses testifed as to how members of the conspiracy fraudulently gained control of victim's accounts.

[11] Petitioner cites to *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), *United States v. Tureso*, 566 F.3d 77 (2009), and *United States v. Berry*, 583 F. Supp. 2d 749 (E.D. Va. 2008) in an attempt to support his position that the government failed to offer the necessary proof of knowledge. Those cases, however, are clearly distinguishable because those cases involved defendants who had given

## II.   PETITIONER'S MOTIONS FOR SUMMARY JUDGMENT

Petitioner filed two papers, both stylized as motions for summary judgment.  *See* ECF

Nos. 481, 488.   In the first motion, Petitioner argues that Petitioner's Motion to Vacate

should be granted under Rule 56(a) of the Federal Rules of Civil Procedure because the

Government had not (at that point) responded and, therefore, there were no disputed issues.

In the second motion, Petitioner attempts to refute the arguments raised in the

Government's opposition brief.   Asserting that his points are undisputable, Petitioner asks

the Court to grant summary judgment under Rule 56(e) of the Federal Rules of Civil

Procedure and to rule in his favor on the merits of his § 2255 motion.   The substantive

points made in these motions are essentially identical to those points raised in his other

filings.[12]   As explained above, these arguments are meritless and do not entitle Petitioner to

any relief.   Accordingly, these motions will be denied as Petitioner has stylized them for the

reasons stated above.

### **CONCLUSION**

For the foregoing reasons, Petitioner Vicente Bilora Mbenga's Motion to Vacate, Set

Aside, or Correct Sentence (ECF No. 438) pursuant to 28 U.S.C. § 2255 is DENIED.

Additionally, Petitioner's Motions for Summary Judgment (ECF Nos. 481 & 488) are

---

false social security numbers when asked for identifying information.  The legal issue in those cases was whether the aggravated identity theft statute requires knowledge that the identifying information belongs to another actual person.  In this case, Petitioner was charged with—and convicted of— accessing the victim's account and using the victim's account to make transactions.  In order for the scheme to work, Petitioner and his co-conspirators had to gain access to real individuals' accounts; otherwise, they would not have been able to obtain any money out of their deceit.

[12] To the extent Petitioner has offered new legal authority or argument in these papers, this Court considered those points in reaching its decision on Petitioner's § 2255 motion.  Thus, while this Court will also rule upon Petitioner's second Motion for Summary Judgment as captioned, this Court has also construed said motion as a reply to the Government's opposition.

DENIED. Finally, the Government's Motion for Extension of Time to File Response (ECF No. 461) and Petitioner's Motion to Request the Court to Provide Petitioner with the Current Due Date for Government's Response (ECF No. 477) are DENIED as MOOT.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated:        May 22, 2015

                                                            /s/
                                                Richard D. Bennett
                                                United States District Judge